798 So.2d 870 (2001)
Anthony NARDONE, Appellant,
v.
STATE of Florida, Appellee.
No. 4D00-3267.
District Court of Appeal of Florida, Fourth District.
November 7, 2001.
*871 Carey Haughwout, Public Defender, and Jennifer Brooks, Assistant Public Defender, West Palm Beach, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Marrett W. Hanna, Assistant Attorney General, West Palm Beach, for appellee.
TAYLOR, J.
Anthony Nardone appeals his conviction and sentence for aggravated assault with a deadly weapon. He raises three issues on appeal: (1) error in allowing a police officer to give an opinion that the weapon used by appellant was a deadly weapon; (2) error in failing to grant a mistrial because of the prosecutor's demonstration during closing argument; and (3) insufficiency of the evidence. We affirm on the issue of sufficiency of the evidence. We reverse, however, on appellant's other two points on appeal.
On March 7, 2000, appellant was a patient at Lawnwood Pavillion, where he was recovering from testicular surgery. Around 4:00 a.m., appellant went to the nursing station, complaining of pain and *872 requesting medication. When the nurse on duty refused his request, appellant became unruly and started yelling and swearing. One of the nurses, Alain Dumont, told appellant that if he did not stop being loud and disruptive, he would be placed in time out in the "quiet room." The "quiet room" is an isolation room with a bed and four point restraints. In protest, appellant got out of his wheel chair, laid down on the floor, reached underneath a flower planter near the nursing station, and held onto an aluminum strip attached to the planter. When Dumont and two orderlies tried to drag appellant in a sheet to the "quiet room," appellant resisted. As one of the orderlies, Clinton Travis, bent down to grab appellant, appellant attempted to strike Travis near his face with the aluminum strip torn from the planter. Dumont and Travis were able to wrestle the piece of metal away from appellant's hand.
The next day Officer Diane McGlon interviewed the witnesses at Lawnwood and retrieved the aluminum strip used during the incident. At trial, the prosecutor called Officer McGlon as his first witness. He asked the officer whether, in her opinion, the strip could be used to cause serious bodily injury. Defense counsel objected, arguing that it was for the jury to decide whether the object was a deadly weapon. He also argued that the officer's answer would be speculative, confusing to the jury, and more prejudicial than probative. The court overruled the objection. The prosecutor then questioned the officer about her training and experience with weapons. He asked whether she was familiar with various weapons and had seen blunt objects, such as knives, baseball bats, or pieces of wood, cause great bodily harm. The officer answered, "yes." The prosecutor again asked the officer whether, in her opinion, the aluminum strip could cause great bodily harm. She answered, "I believe it can, yes sir." Appellant renewed his objection to the officer's opinion. The court again overruled it.
During closing argument, the prosecutor repeatedly struck a stack of books on his table with the aluminum strip to demonstrate that the strip could cause great bodily harm. When he did so, pieces of drywall that had been attached to the aluminum strip scattered around the court room. The prosecutor asked the jury, "could that be a deadly weapon?" Appellant objected and moved for a mistrial. He protested that this was improper, misleading, and highly inflammatory conduct. The court denied the motion but cautioned the prosecutor to henceforth warn the jury before such a demonstration to avoid alarming or startling them.[1] The jury found appellant guilty of aggravated assault with a deadly weapon, as charged.
On appeal, appellant first argues that the trial court erred in allowing Officer McGlon to give an opinion that the aluminum strip was a deadly weapon. To prove appellant committed an aggravated assault with a deadly weapon, the state had to prove beyond a reasonable doubt that the aluminum strip was a deadly weapon. A deadly weapon, within the meaning of section 784.021, Florida Statutes (1999), is:
(1) any instrument which, when it is used in the ordinary manner contemplated by its design and construction, will or is likely to cause death or great bodily harm, or

*873 (2) any instrument likely to cause great bodily harm because of the way it is used during a crime.
Taylor v. State, 672 So.2d 580, 582 (Fla. 1st DCA 1996). Here, the item used in the assault was a strip of aluminum torn from the bottom of a planter. Because it was not designed or ordinarily used as a weapon for causing death or great bodily harm, only the second definition of a deadly weapon applies in this case. Thus, the state had to prove that the aluminum strip was a deadly weapon by establishing that it was actually used in a way likely to cause death or great bodily harm. Appellant argues that Officer McGlon's testimony was irrelevant and speculative on this issue.
The state contends that Officer McGlon's testimony was admissible as lay witness opinion testimony because of her familiarity with the type of object in question. However, opinion testimony of a lay witness is only permitted if based on what the witness has personally perceived. See Fino v. Nodine, 646 So.2d 746, 748 (Fla. 4th DCA 1994). Section 90.701, Florida Statutes (2000), provides that:
If a witness is not testifying as an expert, the witness's testimony about what he perceives may be in the form of inference and opinion when:
(1) The witness cannot readily, and with equal accuracy and adequacy, communicate what he or she has perceived to the trier of fact without testifying in terms of inferences or opinions and the witness's use of inferences or opinions will not mislead the trier of fact to the prejudice of the objecting party; and
(2) The opinions and inference do not require a special knowledge, skill, experience, or training.
In this case Officer McGlon was not an eyewitness to the assault and her testimony was not based upon her personal observations on how the aluminum strip was used. Her opinion that the object could be used as a deadly weapon was speculative. See Mills v. Redwing Carriers, Inc., 127 So.2d 453, 456 (Fla. 2d DCA 1961)(where opinion is nothing more than speculation of an admitted non-expert on issue involved, it invades the province of the jury). It was not, as the state suggests, permissible lay opinion testimony. We distinguish the cases cited by the state, Peacock v. State, 160 So.2d 541 (Fla. 1st DCA 1964), Floyd v. State, 569 So.2d 1225 (Fla.1990), and Lewek v. State, 702 So.2d 527 (Fla. 4th DCA 1997). In those cases, the witnesses were describing their personal observations. For instance, in Peacock, a deputy testified about his visual comparison of the defendant's tires and casts made from tire prints found at the robbery victim's house. In Floyd, the officer was describing a crime scene he observed and his impressions from the disarray. In Lewek, an eyewitness to a car accident gave his opinion regarding the approximate speed of the defendant's car. As the court in Lewek noted, the eyewitness's opinion was admissible because "his testimony was not based on speculation, but rather was based upon his observations at the time of the accident." Id.
The state also suggests that Officer McGlon's testimony was properly admitted as an expert opinion because of the officer's specialized training and experience with weapons. However, when the officer was called to testify, there was no evidence before the jury concerning how appellant had actually used the aluminum strip and thus no predicate for such "expert" testimony. More important, there was no showing that a factual determination whether the aluminum strip was a deadly weapon was not within the realm of an ordinary juror's knowledge and understanding. Before an expert can testify, *874 the subject matter must be beyond the common understanding of the average layman. See § 90.702, Fla. Stat. (1999). "When facts are within the ordinary experience of jurors, conclusions to be drawn therefrom are to be left to those jurors." McGough v. State, 302 So.2d 751, 755 (Fla. 1974). In this case, the jury could draw its own conclusions from the properly admitted facts. See Ruffin v. State, 549 So.2d 250, 251 (Fla. 5th DCA 1989)(testimony of three police officers that in their opinion defendant was man in videotape selling cocaine was prejudicial error where police officers were not eyewitnesses to the crime, they lacked any special familiarity with the defendant, and they were not qualified as any type of experts in identification).
The standard of review for admissibility of evidence is abuse of discretion. See Melendez v. State, 700 So.2d 791 (Fla. 4th DCA 1997). However, a trial court's discretion is limited by the rules of evidence. See Taylor v. State, 601 So.2d 1304, 1305 (Fla. 4th DCA 1992). We agree with appellant that the trial court abused its discretion in allowing the state to introduce Officer McGlon's opinion because it was not admissible as either a lay or expert opinion. See §§ 90.701 and 90.702, Fla. Stat. (2000). Further, the opinion testimony was confusing and could have misled the jury into believing that the aluminum strip was a deadly weapon regardless of the way it was actually used.
The state argues that even if admission of the officer's testimony was error, such error was harmless. However, when we consider this error, coupled with the state's conduct during closing argument, we cannot say beyond a reasonable doubt that the error did not affect the verdict. See Goodwin v. State, 751 So.2d 537, 541 (Fla.1999)("If the appellate court cannot say beyond a reasonable doubt that the error did not affect the verdict, then the error is by definition harmful.").
A critical issue in this case was whether appellant used the aluminum strip in a way likely to cause death or great bodily harm. Appellant argues that the prosecutor's closing demonstration on this issue was misleading and inaccurate, because it did not fairly resemble the evidence at trial. At trial, Travis testified that when he bent over appellant to restrain him, a piece of the planter broke loose in appellant's hands and snapped towards Travis's face. Appellant was lying on his back while he held the aluminum strip in the middle with his left hand. Travis used his hand to block any potential blows to his face. Appellant argues that, in contrast to the prosecutor's demonstration, the evidence did not show that appellant stood over Travis while holding the aluminum strip at its end and forcefully striking it like a hammer. See Brown v. State, 550 So.2d 527 (Fla. 1st DCA 1989), rev. denied, 560 So.2d 232 (Fla.1990)(to be admissible, demonstrative evidence must be accurate).
In addition, appellant argues that the prosecutor's conduct in repeatedly striking the table with the aluminum strip with such force as to send drywall scattering around the courtroom was designed to shock the jury and evoke an emotional response in them. See Jackson v. State, 522 So.2d 802 (Fla.1988)("[Closing argument] may not be used to inflame the minds and passions of jurors so that their verdict reflects an emotional response to the crime or the defendant rather than the logical analysis of the evidence in light of the applicable law."); see also Spriggs v. State, 392 So.2d 9 (Fla. 4th DCA 1980)(rebuking and admonishing prosecutor for picking up knife admitted into evidence and sticking it into jury rail but finding harmless error because of defendant's own bizarre conduct and overwhelming evidence *875 against him); Clark v. State, 553 So.2d 240 (Fla. 3d DCA 1989)(finding that prosecutor's conduct in aiming unloaded murder weapon at jury and pulling the trigger was error as it was theatrical and potentially dangerous but holding the error harmless in the light of the overwhelming evidence of the defendant's guilt). Appellant argues that the prosecutor's conduct, like that in Clark, "tended to create the impression of involving the jurors in the display."
We need not decide whether the prosecutor's demonstration, standing alone, was so egregious as to warrant a new trial. For, as we stated above, under Goodwin, we cannot conclude beyond a reasonable doubt that the cumulative effect of this conduct and the improper opinion testimony of the police officer did not contribute to the verdict. Accordingly, we reverse appellant's conviction and sentence and remand for a new trial.
REVERSED and REMANDED.
STONE, J., concurs.
WARNER, J., concurs specially with opinion.
WARNER, J., concurring specially.
I would also reverse on the prosecution's closing argument. Not only was the prosecutor's demonstration described in the majority opinion completely unsupported by the evidence of how the aluminum piece was actually used, but its force was excessive. Such prosecutorial tactics, which have no relation to the evidence in the case, should not be tolerated.
NOTES
[1] While the jury was deliberating, the trial judge considered appellant's motion for mistrial and decided to treat it as a motion for new trial in the event of a guilty verdict. He noted for the record that the prosecutor struck two books on the table approximately 8 to 10 feet from the nearest juror. The defense added that there were 39 pieces of drywall within a few inches of the jury box and all the way up to the bench.